577 So.2d 787 (1991)
TERRAL BARGE LINE, INC. & Great River Grain Corp., d/b/a Omega Terminal, Inc., Appellant,
v.
MADISON PARISH PORT COMMISSION & Madison Port Terminal, Inc., Appellee.
No. 22251-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
*788 McGlinchey, Stafford, Mintz, Celleni & Lang by Roger Linde, New Orleans, and Andrew Brister, Lake Providence, for appellant.
C. Calvin Adams, Jr., and LeRoy Smith, Jr., Tallulah, for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
NORRIS, Judge.
The plaintiff, Omega Terminal, Inc. (Omega), a joint venture between Terral Barge Lines, Inc., and Great River Grain Corp., appeals a judgment rejecting its petition to mandamus the Madison Port Commission (Commission) to accept its bid for lease of Madison Parish's Port facility, or alternatively to reject all bids and readvertise. The port terminal is located on the Mississippi River in Madison Parish. The trial court found that the Commission acted properly and in accordance with the Public Lease Law, La.R.S. 41:1211, et seq., in rejecting Omega's bid and accepting the bid of Madison Port Terminal, Inc. (Madison). The trial court denied the petition for mandamus and recalled the alternative writ. We affirm the judgment below concluding that mandamus is not a proper remedy.

FACTS
The basic facts are uncontested. In May and June of 1989 the Commission published a bid notice three times in the Madison Journal to lease its port facility. Pursuant to this notice, Madison submitted the only bid. On June 15, 1989, the Commission met; Madison's bid was opened and *789 read aloud. However, because it was concerned that the bid notice contained deficiencies, the Commission requested an opinion from the attorney general's office. Pending the opinion, the Commission formed a committee to investigate Madison and its plans for the premises because Madison was an out-of-state, unknown entity. However, as a result of receiving the attorney general's opinion, Madison's bid was rejected and the lease rebid.
Another bid notice was published in the newspaper three times during September stating the lease purpose as commercial and giving a complete legal description of the premises to be leased. The notice further provided the lease would be "for a primary term of five (5) years," (emphasis added) with options for two additional five-year terms. Tr. 88. It also provided:
All bidders shall deposit with the bid an amount equal to ten percent of the bid for the primary term of the lease. The deposit shall be in the form of a certified check or money order. Tr. 88 (emphasis added).
The bid instruction, available at the Commission office, stated "Each person who submits a bid shall deposit with the bid an amount equal to ten percent of the bid for the primary term of the lease. The deposit shall be in the form of a certified check or money order." Tr. 89. (Emphasis added.)
Omega's bid was (1) $62,000 per year plus (2) 10% of net income after $200,000 in gross proceeds or 2% of gross proceeds, whichever is greater. Its deposit was $6200, 10% of the determinable lease proceeds for one year in the form of two cashier's checks.
Madison's bid was (1) $50,000 per year and (2) 10% of net income after $200,000 in gross proceeds or 1% of gross proceeds, whichever is greater. Its deposit was $25,000, 10% of the determinable lease proceeds for the primary term of the lease in the form of a certified check.
On September 21, 1989 the Commission opened the bids and the deposit discrepancies were brought to the Commission's attention by Madison's attorney. The Commission unanimously voted to accept Madison's bid as the highest bid meeting all the requirements of the Public Lease Law. A lease was executed between the Commission and Madison on September 29, 1989.

PROCEDURAL HISTORY
Omega filed suit on October 26, 1989 seeking, among other relief, a writ of mandamus to compel the Commission to vacate its actions of September 21, 1989, reject Madison's bid and either accept Omega's bid or reject all bids and readvertise. The trial court granted an alternative writ of mandamus and fixed a hearing for November 29, 1990. Madison then filed an exception of no cause of action alleging mandamus was inappropriate because other relief by ordinary means was available. The Commission filed a motion for summary judgment arguing the Commission had discretion to accept the highest bid conforming to the statute or to reject all bids, thus no ministerial duty was involved. La.C. C.P. arts. 3862, 3863; R.S. 41:1215 A(1). At the mandamus hearing the court took the exception and motion for summary judgment under advisement.
The court, in its reasons for judgment, stated, "The highest bid can only be categorized as the `highest bid' if it in fact meets all the conditions set forth in Part 1 of Chapter 10 of Title 41." Tr. 236. It concluded that Omega's deposit did not substantially comply with the Public Lease Law because the amount was insufficient and not tendered by certified check or money order. Since Omega had failed to meet two specific statutory conditions governing its bid, rejection of Omega's bid and acceptance of Madison's was proper. Tr. 237.
The court found that the investigation of Madison was proper under the circumstances and since Omega was a well known business entity in the community, no investigation was required in the second bid process. Finally, the court dismissed Omega's argument that the deposit requirements were vague and ambiguous since both bidders utilized the "determinable" portion of the rental clause as the basis for their deposits. On February 8, 1990, judgment *790 was signed approving acceptance of Madison's bid, denying the petition for mandamus and recalling and setting aside the alternative writ previously issued.

DISCUSSION
On appeal, Omega argues that the Commission improperly accepted Madison's bid and should have accepted the highest bid (Omega's bid) or rejected all bids. It argues that the Commission's action was arbitrary and capricious because Omega substantially complied with the bid notice, the bid instructions and the blank form lease. Finally, it asserts the court improperly refused to allow evidence of its plans for development of the leased facilities and that the provisions for the deposit computation in the bid notice and instructions were vague and ambiguous.
Defendants counter that mandamus is an inappropriate remedy because the Commission's duty was not purely ministerial and Omega had an adequate remedy by ordinary process. Omega admitted, by pleading for alternative relief, that other remedies were available. Omega responds that mandamus is appropriate to reach and correct arbitrary or capricious abuse of discretion by public wards or officials. Defendants also argue that Omega's deposit invalidated its bid and the Commission properly accepted Madison's as the highest bid meeting all the required conditions. Because we conclude mandamus was not proper, we pretermit discussion of the remaining arguments presented by Omega.
Public Lease Law requires:
§ 1214. Advertisement and bids
D. Each person who submits a bid shall deposit with the bid an amount equal to ten percent of the bid but not less than seventy-five dollars. The deposit shall be in the form of a certified check or a money order (emphasis added).
Both the bid notice and the bid instructions specified a deposit of 10% of the bid for the primary term of the lease. The primary term was defined as five years but Omega's deposit covered only one year. In addition, Omega submitted cashiers checks rather than a certified check or money order. Thus, Omega did not strictly comply with the mandates of 41:1214D.
Omega argues, however, that substantial compliance is all that is required. We agree that under certain circumstances substantial compliance is sufficient to fulfill the requirements of the Public Lease Law. See Davis v. Franklin Parish School Board, 412 So.2d 1131 (La.App. 2d Cir.), writ denied 415 So.2d 942 (1982); Plantation on the Green, Inc. v. Gamble, 441 So.2d 299 (La.App. 4th Cir.), writ denied 443 So.2d 600 (1983); West Calcasieu Port, Harbor, & Terminal District v. Cajun Marine Services, Inc., 348 So.2d 169 (La.App. 3d Cir.), writ denied 350 So.2d 1209 (1977). The purpose of the Public Lease Law is to provide the most advantageous lease possible through secret and competitive bidding. Plantation, supra; West Calcasieu, supra. The cases cited find "substantial compliance" where deviations from the statute were made by the public lessor rather than by the bidding parties; thus, no competitive edge was gained by one party over the other. In the instant case, Omega provided a much smaller deposit than Madison and could have defaulted on its bid at a much smaller financial loss. Failure by any bidding party to comply with the bid law subverts the objective of secret and competitive bidding among responsible bidders.
Moreover, this proceeding was a hearing on rule for a writ of mandamus. It is well settled that a writ of mandamus will lie to compel performance of prescribed duties that are purely ministerial; it will not lie to compel performance of an act which contains any element of discretion, however slight. The duty must be a clear and specific legal duty. La.C.C.P. arts. 3861, et seq.; Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676 (La.1985); Reynolds v. Hospital Services District #1, 525 So.2d 668 (La.App. 1st Cir.), writ denied 531 So.2d 480 (1988); Caldwell Country Club v. Dept. of Trans. & Dev., 438 So.2d 723 (La.App. 2d Cir.1983). Mandamus does not issue in a "doubtful" case. *791 City of Shreveport v. Stanley, 446 So.2d 839 (La.App. 2d Cir.), writ denied 450 So.2d 956 (1984); Gautreau v. Board of Elec. Examiners, 167 So.2d 425 (La.App. 1st Cir. 1964). "A ministerial duty is one which is performed without requiring the exercise of judgment, in obedience to some clear command." Note, Mandamus  Compelling an Official to Perform Discretionary Duty, 29 La.L.Rev. 570, 574 (1969). It is obvious that the determination of whether a bidder has substantially complied with the requirements of the statute involves the exercise of some judgment and is discretionary.
Omega argues that even though the determination of "substantial compliance" may be discretionary, mandamus is appropriate to correct an arbitrary or capricious abuse of discretion by public boards or officials. Whether relief by mandamus is still available to correct an arbitrary or capricious abuse of discretion has been the subject of some controversy in the jurisprudence since the enactment of C.C.P. art. 3862 by 1960 La.Acts No. 15, § 1.[1]
However, it is not necessary to determine if mandamus is appropriate to correct an arbitrary or capricious abuse of discretion by public boards or officials. Lower court findings of fact will not be disturbed absent a finding they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). We find no clear error in the trial court's findings that Omega did not "substantially comply" with the Public Lease Law. Thus, the Commission's action in denying Omega's bid was in pursuit of compliance with the Public Lease Law and could not have been arbitrary and capricious. Mandamus is inappropriate here.
Even if we found that Omega had substantially complied with the statute, mandamus would still not lie. The Commission first had discretion to determine if the bids substantially complied with the requirements of the statute. Second, had the Commission determined Omega's bid did substantially comply, the Commission was vested by statute with the right either to accept the highest conforming bid or reject all bids.[2] La.R.S. 41:1215 provides in pertinent part:
(1) * * * The lessor shall accept only the highest bid submitted to it by a person or persons who meet all the conditions of this Part [.] * * * The lessor shall have the right to reject all bids (emphasis added).
Thus, the Commission had more than one discretionary act to perform. As the court noted in State v. Mayor and Board of Aldermen of the City of Tallulah, 549 So.2d 891, 896 (La.App. 2d Cir.1989), writ denied 556 So.2d 39 (1990):
Mandamus is an extraordinary remedy and will never issue except when there is a clear and specific right to be enforced or when there is a purely ministerial duty to be performed. * * * The proper function of a writ of mandamus is to compel the doing of a specific thing ... It contemplates the necessity of indicating the precise thing to be done and so it is generally held that it is not an appropriate *792 remedy for the enforcement of duties generally or to control and regulate a general course of official conduct for a long series of continuous acts to be performed under varying conditions. See also, Gautreau, supra; Caldwell, supra; Disposal Systems, Inc. v. Calcasieu Parish School Board, 243 So.2d 915 (La. App. 3d Cir.1971); Windjammer, Inc. v. Hardy, 458 So.2d 493 (La.App. 4th Cir.), writ denied 460 So.2d 606 (1984) (emphasis added).
The Commission, in the instant case, had the discretion to either accept the highest bid conforming to Part I of the Public Lease Law or to simply reject all bids. Mandamus does not lie where the public entity has the option of accepting the highest conforming bid or rejecting all bids. Disposal Systems, supra; State ex rel. Cuccia v. French Market Corp., 334 So.2d 241 (La.App. 4th Cir.), writ denied 337 So.2d 189 (1976); D.J. Talley & Son, Inc. v. City of New Orleans, 303 So.2d 195 (La. App. 4th Cir.1974).

CONCLUSION
The duties sought to be compelled by Omega involved acts of discretion. We conclude the trial court was not manifestly erroneous in finding that Omega was not in substantial compliance with the Public Lease Law, thus the Commission's decision to reject Omega's bid was not arbitrary or capricious. Furthermore, because of the Commission's wide discretion either to accept the highest conforming bid or to reject all bids, there is more than one clear and specific right to be enforced, more than one precise thing to be done, and mandamus cannot lie. The judgment is affirmed at appellant, Omega's, costs.
AFFIRMED.
NOTES
[1] Some cases have included arbitrary and capricious abuses of discretion as grounds for mandamus: see, West Carroll National Bank v. West Carroll Parish School Board, 136 So.2d 699 (La. App. 2d Cir.1961), writ denied, not reported (1962); Melancon v. Police Jury of Lafayette, 301 So.2d 715 (La.App. 3d Cir.1974); Note, 29 La.L. Rev. 570, supra. Contra, State ex rel. Hayes v. La. State Board of Barber Examiners, 208 So.2d 369 (La.App. 1st Cir.), writ denied 252 La. 169, 210 So.2d 53 (1968); State v. Mayor and Board of Aldermen of the City of Tallulah, infra.
[2] Prior to 1982, the Public Bid Law, La.R.S. 38:2211 et seq., also gave the public entity wide discretion to reject any and all bids without regard to cause. 1982 La.Acts 691, § 1 removed this discretion and required just cause to reject bids under the Public Bid Law. The Public Lease Law was not amended to require just cause to enable the public entity to reject all bids. Under the Public Bid Law, as amended, mandamus is an appropriate remedy to compel a public entity to inform a bidder of the just cause for rejection of its bid. Milton J. Womack, Inc. v. Legislative Budgetary Control Council, 470 So.2d 460 (La.App. 1st Cir.1985). Absent just cause to reject all bids, mandamus can be used to compel the awarding of the contract to the lowest responsible bidder under the Public Bid Law. Pittman Const. Co., Inc. v. Parish of East Baton Rouge, 493 So.2d 178 (La.App. 1st Cir.), writ denied 493 So.2d 1206 (1986). But see, Barber Bros. Contracting Co. v. DOTD, 529 So.2d 442 (La.App. 1st Cir.), rev'd 533 So.2d 1226 (La.1988).