h JONES, Judge.
Defendants/Appellants, the City of New Orleans; the Honorable Marc H. Morial, in his capacity as the Mayor of the City of New Orleans; Richard W. Bruñe, in his official capacity as the Treasurer of the City of New Orleans; Marina M. Kahn, in her official capacity as the Chief Financial Officer and Director of Finance of the City of New Orleans; and Marlin Gusman, in his official capacity as the Chief Administrative Officer of the City of New Orleans (hereinafter “the City”), appeal the June 1, 2000 judgment rendered by the Civil District Court for the Parish of Orleans. The City seeks reversal of the granting of a petition for mandamus that ordered the City and the Collector of Revenue for the State of Louisiana “to deduct one-half of one percent of the taxes shown to be collectible by the Orleans Parish tax rolls, including that shown on the tax rolls to be exempted by virtue of homestead exemptions, for the City of New Orleans, and to henceforth remit such funds to the Sheriffs Pension and Relief Fund, the Appel-lees, in accordance with Louisiana Revised Statute ll:2174(a) (discussed infra) for the tax year”. We affirm.
12Facts and Procedural History
The Sheriffs Pension and Relief Fund (hereinafter “the Fund”) was created by La. R.S. § 11:2171 in 1964, as a statewide pension system established for the benefit of the sheriffs of the State of Louisiana. La. R.S. § 11:103 mandates how the Fund derives its funding from several sources, including employee contributions, employer contributions, revenue sharing contributions, and contributions of ad valorem taxes.
Since 1948 under La. R.S. § 11:103, each of the Louisiana Parishes, including the parish of Orleans, has been statutorily required to contribute a percentage of its collectible ad valorem taxes to the Fund. The public official charged with fulfilling each parish’s obligation differs from parish to parish. In accordance with Louisiana law, the State Tax Collector for the City of New Orleans is responsible for deducting and remitting the contribution to the Fund on behalf of the City of New Orleans, while the Sheriff of each other parish, as ex-officio tax collector, is responsible for deducting and remitting the contribution on behalf of his parish.
In 1999, representatives from the Fund contacted city officials requesting that the City begin making payments of ad valorem taxes pursuant to La. R.S. § 11:2174, which succeeded the original statute of 1964. After the parties could not resolve *753 the matter, the Fund filed a mandamus action.
The Fund’s original Petition for Writ of Mandamus and Rule to Show Cause sought an alternative writ of mandamus directing one-half of one percent of the ad valorem taxes shown to be collectible by the tax rolls of Orleans Parish for 1999 be deducted and remitted to the Fund. Subsequently, the Fund amended its original petition to address ad valorem taxes for the 2000 tax year and for future years | Sbecause the Fund argued that they were concerned about the City’s alleged continued failure to meet its obligation to the Fund.
In response to the petition, the City filed their Exceptions, Affirmative Defenses, Reconventional Demand and Answer. The City raised several issues of Constitutionality and the propriety of the use of the mandamus proceeding. An Answer was filed by the Fund and in addition, Mr. Crawford filed a separate Preemptory Exception.
A judgment was issued on June 20, 2000 ordering the City, its officials and Brett Crawford, in his dual capacities as State Tax Collector and Collector of Revenue for the State of Louisiana, “to deduct one-half of one percent of the taxes shown to be collectible by the Orleans Parish tax rolls, including that shown on the tax rolls to be exempted by virtue of homestead exemptions, for the City of New Orleans, and to henceforth remit such funds to the Sheriffs Pension and Relief Fund, the Appel-lees, in accordance with La. R.S. § 11:2174(a) for the tax year”. It is from this judgment that the City and the State appeal, arguing that the district court’s judgment granting the writ of mandamus was improper, that the district court erred in holding the La. R.S. § 11:2174 imposed a clear obligation on the City and its officials to contribute property tax, and that the district court erred in failing to address whether La. R.S. § 11:2174 as applied to the City violates the La. Constitution.
Prior to discussion of the issues raised on appeal, we note that La. R.S. § 11:2174, provides, in pertinent part that:
The Sheriffs Pension and Relief Fund shall be composed as follows: Each sheriff, except in the parish of Orleans, shall deduct annually one-half of one percent |4of the aggregate amount of the taxes shown to be collectible by the tax rolls of his parish and shall make remittance of such amounts direct to the treasurer of the board. In the parish of Orleans, the state tax collector for the City of New Orleans shall deduct annually one-half of one percent of the aggregate amount of taxes shoivn to be collectible by the tax rolls of Orleans Parish and shall make remittance of such amounts to the treasurer of the board. The deductions directed to be made by the state tax collector for the City of New Orleans under this Act shall begin with the 1961 tax rolls and shall be annually thereafter. (emphasis added)
The main issue on appeal is the interpretation of this statute. Although the record clearly indicates that the City originally raised specific constitutional challenges to this statute, the district court did not rule on the constitutionality of the statute, thus, we will not address this issue as it remains in the district court.
Discussion
Writ of Mandamus
The City argues that the writ of mandamus should not have been granted by the district court because the Fund did not demonstrate that the law does not provide relief by ordinary means or that *754 the delay involved in obtaining ordinary relief may have caused an injustice. La. C.C.Pr. art 3862 provides that a writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice .... a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law.
The Fund argues that since the City and the State Tax Collector flatly and boldly refuse to perform their duty, under the circumstances, relief by ordinary proceeding is unveiling and that the delays inherent in an ordinary proceeding irreparably harm the Fund.
|bA ministerial duty is one in which a law or an ordinance in plain and unmistakable terms require a public official to perform as a part of and in connection with his or her official functions. State ex rel v. Police Jury of Vernon Parish, 3 So.2d 186 (La.App. 1st Cir.1941); Windjammer, Inc. v. Hardy, 458 So.2d 493 (La.App. 4th Cir.1984). La. R.S. § 11:2174 establishes a ministerial duty in that the State Tax Collector is to collect taxes on behalf of the Fund and remit those monies to the Board of Trustees of the Fund. In this mandamus action the Fund is not seeking a money judgment, but rather an order by which the Sate Tax Collector for the City and the City Officials are required to perform their duty imposed under La. R.S. 11:214. Therefore, mandamus is appropriate to remedy the City’s failure and the failure of the State Tax Collector to remit mandatory tax contributions to the Fund.
The parties agree that the City has not remitted monies to the Fund since 1961. Although the City argues that the Fund could have sought relief via ordinary proceeding, we agree with the district court in its reasoning that had the Fund been forced to rely on ordinary proceedings for future relief in this matter, injustice to the Fund would have occurred. The delays involved in obtaining relief by ordinary means would have caused such an injustice.
The writ of mandamus was issued to collect the money owed now and in the future. It would cause an unreasonable delay for the Fund to rely on ordinary proceedings to collect the monies that the City already possessed, and to await the resolution of a suit for damages would result in the same scenario. The Fund also instituted a separate action in the district court seeking damages for the City’s prior | ^failure to make contributions. The State Tax Collector and the City would still be ordered to pay into the Fund.
The City still contends that of the Fund waited 38 years to collect payments and that there was no urgency that justified the extraordinary remedy of mandamus. We find that there need not be an urgency under La.C.C.Pr. art 3862, just an injustice; and that the Fund’s failure to request the monies for such a long period of time does not excuse the City from paying overdue and future monies into the Fund.
There was no error by the district court in issuing the mandamus ordering the City to place money already collected and money collected in the future into the Fund. We find that the requirements of La. C.C. Pro. art. 3826 were met.
The City’s Obligation in Accordance to La R.S. 11:2174
The City argues that La. R.S. § 11:2174 does not impose an obligation on the City or its officials to make contributions to the Fund from revenues generated from the City’s tax rolls. They further argue that La. R.S. § 11:2174 does not *755 implicate ad valorem taxes levied on the parish lines.
However, this Court agrees with the district court and the Fund finding that La. R.S. § 11:2174 clearly and unambiguously states that the amount to be deducted by and remitted is based on the tax rolls of Orleans Parish. La. R.S. 11:2174 clearly states that:
.... In the Parish of Orleans, the state tax collector for the City of New Orleans shall deduct annually one-half of one percent of the aggregate amount of the taxes shown to be collectible by the tax rolls of Orleans Parish and shall make remittance of such amounts to the treasurer of the board. (emphasis added)
17As the Louisiana Supreme Court noted, “it is well established that the task of statutory construction begins with an examination of the language of the statute itself,” State v. Barbier, 98-2923 (La.9/8/99), 743 So.2d 1236. Further, La. C.C. art. 9 provides that, if “a law is clear and unambiguous and its application dies not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of the intent of the legislature.”
Both our interpretation and the district court’s interpretation of La. R.S. § 11:2174, are consistent with the meaning of the statute and the issuance of a writ of mandamus for the Fund to collect from the City does not lead to absurd consequences. La. C.C. art 13.
The City further contends that historically the State Tax Collector was never responsible for the collection of parish taxes. They argue that in all parishes except Orleans, the Sheriffs serve as tax collectors of the state, parish and parochial taxes. In Orleans Parish, the State Tax Collector collected state taxes while the city had its own tax collectors for the city and municipal taxes. The statute clearly imposes a duty on the State Tax Collector in the parish of Orleans. There is a definitive distinction between other parishes and Orleans Parish. In light of this argument, the district court puts it best in its Reasons for Judgment:
“This Court does not presume that the legislature inserted idle, meaningless language in the law. State law charges the State Tax Collector for the City of New Orleans with the mandatory duty of deducting and remitting to the Sheriffs Fund one-half of one-percent of the aggregate amount of the taxes shown to be collectible by the tax rolls of Orleans Parish, and he must insure that he fulfills his responsibility. A delegation of his duty to the New Orleans Treasurer or other City Officials should not relieve the State Tax Collector, his successor, or the City Officials from their duty to ensure that the law is abided by”
IsThe City further attempts to cast doubt on the clarity of La. R.S. § 11:2174 by arguing that the statute does not apply to the City since it implicates only the State Tax Collector and applies only to state ad valorem taxes, which no longer exist, and not to parish or municipal ad valorem taxes. The City’s oral argument to this Court placed emphasis on the historical role of the State Tax Collector, concluding that that State Tax Collector was never responsible for parish taxes.
This Court concluded in Amann v. Succession of Pick, 323 So.2d 899 (La.App. 4th Cir.1975), writ denied, 328 So.2d 165 (La.1976) that the tax collector for the parish ad valorem taxes levied by the Parish of Orleans was the State Tax Collector. We concluded, “it is clear that Art. 10, § 6 authorized the legislature to provide that the tax collector for the Parish of Orleans was to collect municipal and district taxes *756 such as those for which the lots in the instant case were sold. It is equally clear that the tax collector for the Parish of Orleans [sic] was the State Tax Collector of the City of New Orleans.” We continued by stating, “[W]hile Art. 14, § 21, which established [the State Tax Collector’s] office, did not outline his duties when this is read in connection with Art. 7, § 65, it follows that he was to perform those duties which in all parishes were performed by the sheriff with respect to the collection of taxes.” Id at 902.
Keeping with the holding in Amann and relying on the district court’s Reasons for Judgment, we' find that The Fund depends on all contributions of ad valorem tax revenue by each of the parishes to provide its members the benefits guaranteed by statute. The Fund has successfully argued that sixty-three parishes throughout Louisiana contribute to the Fund without question and neither the State Tax Collector nor the City are exempt under the clear language of the law.
19Pecree
After review of the record and for the reasons stated herein, we find that the district court properly issued a writ of mandamus against the City of New Orleans in favor of the Sheriffs Pension Fund. We further find that La. R.S. § 11:2174 is clear and unambiguous and places a duty on the City and on the State Tax Collector to remit certain taxes into the Sheriffs Pension Fund. We affirm the judgment of the district court.
AFFIRMED.